## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | ) Chapter 11 |
| SPRINGBOK SERVICES, INC., | ) Case No. 10-25285-HRT |
| EIN: 20-3400089 | ) |
| Debtor. | ) |

### MOTION FOR ORDER AUTHORIZING THE SALE OF CERTAIN PROPERTY OF DEBTOR'S BANKRUPTCY ESTATE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES
### [ARROWEYE]

Springbok Services, Inc., ("Debtor"), by and through its counsel, Bieging Shapiro & Burrus LLP, pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 2002 and 6004, for its Motion for Order Authorizing the Sale of Certain Property of Debtor's Bankruptcy Estate Free and Clear of Liens, Claims, Interests and Encumbrances [Arroweye] (this "Motion"), and in support hereof, Debtor states as follows:

### I. INTRODUCTION

1. On June 18, 2010 (the "Petition Date"), Debtor filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code. Debtor continues in possession of its assets as a debtor in possession under 11 U.S.C. §§ 1107 and 1108. An official unsecured creditors' committee was formed on June 29, 2010.

2. On June 25, 2010, Debtor filed its Motion for Expedited Entry of Order, seeking authority to incur postpetition secured and superpriority financing from KeyBank. [Dkt. No. 29] In this motion, Debtor requested approval of a debtor-in-possession facility of advances of new funds by KeyBank National Association ("KeyBank") in an amount of approximately $1,075.000.00 (the "DIP Facility").

3. On July 28, 2010, the Court entered its Final Order (I) Authorizing Debtor to Incur Postpetition Secured Superpriority Indebtedness pursuant to Sections 105(a), 361, 362, 364(c)(1), 364(c)(2), 364(c)(3) and 507; (II) Modifying the Automatic Stay; and (III) Scheduling a Final Hearing pursuant to Bankruptcy Rules 4001(b) and 4001(c) (the "Final Financing Order") [Dkt. No. 127].

4. The Final Financing Order authorizes Debtor to utilize the DIP Facility up to the amount of $1,075,000.00 in accordance with the budget attached to the Final Financing Order (the "Budget"). The Budget is projected to end on August 27, 2010, although Debtor is currently ahead of the Budget and it is anticipated that sufficient funds will remain to enable Debtor to consummate the sales transaction contemplated by this Motion.

BSB # 130710-2

## II. SALE OF ASSETS

5. Debtor is a provider of prepaid MasterCard and Visa debit cards designed for use in corporate incentive, loyalty and rebate programs, as well as for payroll and student tuition programs. There are several distinct activities and organizations that come together to provide prepaid card services in the U.S. market:

- *Banks or "The Issuers"* – Banks are the only organizations that can provide membership in the MasterCard® and Visa® networks. They are required to approve each card program and hold all card balances in trust for cardholders.

- *Associations or "The Brands"* – The primary payment card networks in the United States are MasterCard®, Visa®, Discover® and American Express®. These organizations own the recognized payment brands and maintain the global networks that provide acceptance at merchant locations, and thus connect cardholders with merchants and banks.

- *Processors and Cardholder Services Providers* – Processors integrate with the electronic systems of the associations to authorize and settle purchases, track cardholder information and transaction activity, provide customer service and move money between entities. The cardholder services function involves providing call center agents and integrated voice response (IVR) systems to respond to cardholder questions and resolve issues that may arise in card usage. Debtor serves as the processor of its own transactions, and in that capacity, is a Visa- and MasterCard-approved processor.

- *Program Managers* – In the prepaid industry, program managers are the organizations that assemble the necessary components to create, develop, launch and maintain a prepaid card program, such as a corporate incentive programs. They maintain the client relationship and are responsible for the program's success.

- *Card Production and Fulfillment* – Every card that is manufactured needs to be designed, embossed, encoded, packaged and delivered in a highly secure environment.

6. Debtor serves as the Processor, Program Manager, Cardholder Service Provider and it manufactures, embosses and fulfills prepaid cards for all of its card programs.

7. Debtor has agreed to sell certain assets to Arroweye Solutions, Inc. ("Arroweye"), free and clear of all interests and encumbrances. Specifically, Arroweye has agreed to purchase the following assets (the "Property") for $305,750.00:

    a. Item: Phoenix 6020E Embosser (1200) - Quantity: 2

    b. Item: Maticard Systems Z30 Embosser (950) - Quantity: 3

   c. Item: Spartanics Series 400 – Kounter Card Counter - Quantity: 1

 8. The bid is contingent on Arroweye being able to purchase all six items making up the property.

 9. The sale to Arroweye will be subject to a higher and better bid at an auction currently scheduled by Debtor to be held either on September 14, 2010, at 9:00 a.m. or on September 16, at 9:00 a.m., at Debtor's facilities located at 345 Inverness Drive South, Building A, Suite A-140. Any higher bid must be for all Property; bids for less than all the Property will not be considered.

 10. The Debtor will sell the Property "as-is, where-is" with no representations or warranties.

### III. LEGAL AUTHORITY FOR SALE FREE AND CLEAR OF LIENS AND ENCUMBRANCES

 11. The Property will be sold free and clear of all liens and encumbrances. To the best of Debtor's knowledge, the Property is subject to a lien in favor of The Bancorp Bank ("Bancorp"). Additionally, personal property tax may also be due and owing to Douglas County.

 12. Pursuant to 11 U.S.C. § 363(f), a debtor in possession may sell property of an estate free and clear of any interest in such property of an entity other than the estate if:

> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

 13. A party's consent for a free and clear transfer under § 363(f)(2) may be implied and an interest holder's failure to object, after due notice and an opportunity, qualifies as consent for purpose of a free and clear transfer. *See e.g., Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345-46 (Bankr. E.D. Pa. 1988); *Hargrave v. Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D. N.J. 1994).

 14. In this instance, Bancorp has consented to the sale of the Assets free and clear of its lien subject to the provisio that net proceeds from the sale be paid to Bancorp.

15. Douglas County has filed a Proof of Claim in the amount of $90,578.00, designated at Claim No. 47 (the "Douglas County Claim") for 2010 personal property taxes. Douglas County asserts that the Douglas County Claim enjoys a first priority lien pursuant to Colo. Rev. Stat. § 39-1-207.

16. On August 20, 2010, Debtor filed its Expedited (1) Application to Employ and Compensate Auctioneer, and (2) Motion to Sell Property of the Estate Free and Clear of Liens and Encumbrances (the "Auction Motion") [Dkt. No. 157], seeking authority to employ and compensate an auctioneer to sell certain of Debtor's assets, excluding the Property, at an auction.

17. Debtor is guaranteed to receive at least $200,000.00 from the auction. As provided for in the Auction Motion, $90,578.00 of the proceeds generated from the auction will be set aside for the Douglas County Claim with Douglas County's lien attached to such proceeds. Thus, Douglas County is fully protected by proceeds that Debtor will receive from the auction. Thus, no further proceeds need be set aside from this sale for Douglas County and the Property can be sold free and clear of Douglas County's lien.

18. Debtor believes that the interests describe above are all of the interests asserted against or in the Property.

19. Based upon the foregoing, Debtor believes that the Assets may be sold to the buyer free and clear of such interests.

## IV. APPROVAL OF TRANSACTIONS

20. The standard for approval of a sale in bankruptcy cases is the "business judgment" rule and under that standard, the debtor-in-possession has the burden to establish sound business reasons for the terms of the proposed sale. *In re Castre, Inc.* 312 B.R. 426, 428 (Bankr. D. Colo. 2004).

21. The factors for the Court to consider in whether to approve the sale include (i) whether there exists any improper or bad motive in undertaking the sale transaction; (ii) the fairness of the price and the result of negotiations or bidding at arm's length; and (iii) adequate procedures, including proper exposure to the market and accurate and reasonable notice to all parties in interest. *Id.* In this case, all three factors of the business judgment test are met.

22. First, no improper motives underlie this transaction. Since the inception of this case, the Debtor has attempted to position its business in order to effectuate a sale of its assets and related business as a going concern to the extent possible. Since the petition date, the Debtor has done just that.

23. Moreover, the Debtor has actively engaged in discussions with all persons who expressed an interest in acquiring its assets and business operations. Over several months prior to the Petition Date, Debtor engaged Integris Partners to provide investment banking services to Debtor. These efforts resulted in contact with more than thirty (30) parties, some of which were initially contacted by Raymond James.

24. Although there were expressions of various levels of interest, with offers being made, Debtor was unable to close any capital raising transactions. In fact, even though Debtor accepted a non-binding offer from a group led by Lee Equity based in New York and proceeded with detailed due diligence and negotiations over several weeks, Debtor was unable to move the Lee Equity offer to closing.

25. After the termination of the Lee Equity offer in May 2010, Debtor reached back out to Prepaid Solutions, Inc. ("Prepaid Solutions"), which was a logical strategic buyer in that it has a similar business model that markets and sell network branded prepaid debit cards for the payroll and general purpose reloadable card market. After extensive good faith and arm's-length negotiations with Prepaid Solutions, Debtor initially secured both debtor-in-possession and exit financing commitments from Prepaid Solutions. However, at the eleventh hour, this deal fell through.

26. Subsequently, Debtor approached several buyers to solicit bids for its assets. In connection with this solicitation, Debtor broke its assets into three categories: (1) the processor platform assets (which are the subject of this Motion), (2) the fulfillment assets (the "Fulfillment Assets"), and (3) miscellaneous assets (the "Miscellaneous Assets"). The Property is in included in the Fulfillment Assets.

27. Debtor received an offer from CPI Card Group-Colorado, Inc. ("CPI"), for all of the Fulfillment Assets and Miscellaneous Assets, including the Property, in the amount of $250,000.00. Thus, Debtor determined that the bid from Arroweye for the Property was better than CPI's initial bid. Subsequently, CPI increased its offer to $335,000.00 for over 100 individual items contained in the Fulfillment Assets including four of the items contained in the Property plus 350 items contained in the Miscellaneous Assets that are included in the Auction Motion.

28. In the Debtor's business judgment, the offer from Arroweye for only six items of the Fulfillment Assets represents a better offer than submitted by CPI for a substantial portion of the Fulfillment Assets. This is particularly true when the guaranteed proceeds from the Auction Motion are taken into consideration. Individually, the Arroweye offer is better and becomes even better when considered in conjunction with the Auction Motion.

29. Arroweye is a non-insider, with no affiliation with the Debtor or any of its insiders or affiliates.[1]

30. Further, the Debtor believes that the Purchase Price to be paid by Arroweye is fair and reasonable.

31. The sale Arroweye is in the best interest of creditors and this estate. It maximizes the value of the Debtor's assets, capturing and preserving going concern value.

32. Under the circumstances, Debtor also request that the fourteen-day stay provided in Fed. R. Bankr. P. 6004(h) be waived.

---

[1] A former employee of Debtor currently works for Arroweye. This employee was not an officer or director of Debtor.

BSB # 130710-2                                    5

WHEREFORE, following notice and an opportunity for a hearing, the Debtor respectfully requests that this Court enters an Order:

A. Granting this Motion;

B. Authorizing Debtor to convey the Property free and clear of claims, liens and other interests pursuant to 11 U.S.C. § 363 (b) and (f) and in accordance with the above-referenced APA; and

C. Waiving the fourteen-day stay as provided in Fed. R. Bankr. P. 6004(h), and

D. Providing such other and further relief as the Court deems appropriate.

Dated: September 3, 2010.

                BIEGING SHAPIRO & BURRUS, LLP

                By: /s/ Steven T. Mulligan
                    Duncan E. Barber, #16768
                    Steven T. Mulligan, #19901
                4582 S Ulster Street Parkway, Ste. 1650
                Denver, Colorado 80237
                Telephone: (720) 488-0220
                Facsimile: (720) 488-7711
                Email: dbarber@bsblawyers.com
                Email: smulligan@bsblawyers.com

                Counsel for Springbok Services, Inc.