## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SPRINGBOK SERVICES, INC., | ) Case No. 10-25285-HRT |
| EIN: 20-3400089 | ) |
| | ) |
| Debtor. | ) |
| | ) |

### ORDER GRANTING
### MOTION FOR ORDER APPROVING OVERBID AND AUCTION PROCEDURES
### INCLUDING BREAK-UP FEE AND EXPENSE REIMBURSEMENT

THIS MATTER comes before the Court upon the Debtor's Motion for Order Approving Overbid and Auction Procedures Including Break-Up Fee and Expense Reimbursement (the "Bid Procedures Motion"), filed by Springbok Services, Inc. (the "Debtor"), seeking approval of certain sale and bidding procedures (the "Bidding Procedures") including a break-up fee (the "Break-up Fee") and expense reimbursement (the "Expense Reimbursement") relating to the sale of certain of Debtor's assets (the "Property") to Fifth Third Processing Solutions LLC (the "Buyer") pursuant to the Asset Purchase Agreement, entered into between the Debtor and the Buyer (the "APA").

The Debtor has notified parties in interest of those sales procedures and afforded such parties an opportunity to object to the proposed procedures. A hearing to approve the bidding procedures was held on _____ (the "Bidding Procedures Hearing"). The Court having reviewed and considered (a) the Bid Procedures Motion, (b) the objections thereto, if any, and (c) the arguments of counsel made, and the evidence proffered or adduced, at the Bidding Procedures Hearing, and good cause appearing,

IT IS FOUND AND DETERMINED THAT:

    A.    The Court has jurisdiction over this matter under 28 U.S.C. §§ 157(a) and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N), and (O). Venue of these cases and the Sale Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

    B.    Good and sufficient notice of the relief sought in the Bid Procedures Motion with respect to the proposed Bidding Procedures, Break-Up Fee and Expense Reimbursement, notice procedures and other related matters (as set forth herein) has been given and no other or further notice is required. A reasonable opportunity to object to or be heard regarding such relief has been afforded to all interested persons and entities, including the following: (i) the Office of the United States Trustee; (ii) counsel to the Buyer; (iii) all entities known to have asserted any lien or other interest in or upon the Property; (iv) all federal, state and local taxing authorities that have jurisdiction over the Property; and (v) all other parties that had filed a notice of appearance

and demand for service of papers as of the date of the Motion. No other or further notice of the request for the relief granted herein need be given.

C. The Bidding Procedures, as provided herein, are fair, reasonable and appropriate and are designed to maximize the recovery on the Property.

D. The Debtor has demonstrated a compelling and sound business justification for authorizing the payment of the Break-Up Fee and Expense Reimbursement to the Buyer under the circumstances, timing and procedures set forth in the Bid Procedures Motion and the APA.

E. The Break-Up Fee and Expense Reimbursement are fair and reasonable, provide a benefit to the Debtor's estate and creditors, and were negotiated by the parties to the APA in good faith and at arms' length.

F. The Debtor's payment to the Buyer (under the conditions and as set forth in the APA) of the Break-Up Fee and Expense Reimbursement is (a) an actual and necessary cost and expense of preserving the Debtor's estate within the meaning of Bankruptcy Code § 503(b); (b) of substantial benefit to the Debtor's estate; (c) reasonable and appropriate, in light of, among other things: (i) the size and nature of the proposed sale; (ii) the substantial efforts that have been and will be expended by the Buyer; and (iii) the benefits the Buyer has provided to the Debtor's estate and creditors and all parties in interest herein, notwithstanding that the proposed sale is subject to higher or better offers; (d) not a penalty, but rather, a reasonable estimate of the damages to be suffered by the Buyer in the event the transactions contemplated by the APA are not consummated under the circumstances set forth therein; and (e) necessary to ensure that the Buyer will continue to pursue its proposed acquisition of the Property.

G. In particular, the APA was the culmination of a process undertaken by the Debtor and its professionals to negotiate a transaction with a bidder who was prepared to pay the highest or otherwise best purchase price to date for the Property, in order to maximize the value of the Debtor's estate. The payment of the Break-Up Fee and Expense Reimbursement should be approved because, among other things, (i) no other party to date has been willing to enter into a definitive agreement for the purchase of the Property on terms acceptable to the Debtor; (ii) the execution of the APA is a necessary prerequisite to determining whether any party other than the Buyer is willing to enter into a definitive agreement for the purchase of the Property on terms acceptable to the Debtor and his creditors; (iii) the protections afforded to the Buyer by the Break-Up Fee and Expense Reimbursement were material inducements for, and express conditions of, the Buyer's willingness to enter into the APA; and (iv) the Buyer is unwilling to commit to hold open its offer to purchase the Property and consummate the other transactions under the terms of the APA unless it is assured of payment of the Break-Up Fee and Expense Reimbursement. Thus, assurance to the Buyer of the payment of the Break-Up Fee and Expense Reimbursement has promoted and will promote more competitive bidding by inducing the Buyer's bid, which bid otherwise would not have been made and without which initial bid, any competitive bidding would have been limited. Further, the Break-Up Fee and Expense Reimbursement induced the Buyer to research the value of the Property and propose the transactions contemplated by the APA, including, among other things, submission of a bid that will serve as a minimum or floor bid on which all other bidders can rely. Thus, the Buyer has provided a benefit to the Debtor's estate by increasing the likelihood that the price at which the

Property is sold will reflect its true worth. Finally, absent authorization to pay the Break-Up Fee and Expense Reimbursement, the Debtor may lose the opportunity to obtain the highest and best available offer for the Property. As a result, the payment of the Break-Up Fee and Expense Reimbursement are an expense necessary to maximize the value of the Debtor's estate.

H. The entry of this Order is in the best interests of the Debtor and his estate, creditors and interest holders and all other parties in interest herein.

IT IS THEREFORE ORDERED:

1. The Bid Procedures Motion is GRANTED to the extent set forth herein.

2. Any objections to the entry of this Order or the relief granted herein and in the Bid Procedures Motion that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits with prejudice.

**A. Overbid and Auction Terms and Procedures**

3. The following Bid Procedures are approved in all respects:

    a. **Auction.** If no objections are filed opposing these bid procedures, a public auction will be conducted at the offices of Debtor's offices at 345 Inverness Drive South, Building A, Suite A-140 September 14, 2010, commencing at 9:00 a.m., or, in the event that objections are filed, on September 16, 2010, at 9:00 a.m. (the "Auction"). At the Auction, any bid in excess of Buyer's offer ("Overbid") must be in writing on an executed bid form (a "Bid Form") in substantially the form attached to the Bid Procedures Motion as **Exhibit A**. Each written Overbid submitted to Debtor at the auction will be immediately read aloud to all bidders. The Overbids will be taken in the order submitted to Debtor. Debtor will review all Overbids and will determine if the Overbid meets the minimum requirements for an overbid and is the highest and best bid. Bidding will be in fifteen (15) minute increments and shall end if no bids are submitted in a give fifteen minute time period. In the event one or more subsequent qualifying Overbids are made, the last and highest such subsequent qualifying Overbid will be deemed the successful bid (the "Successful Bidder") and Debtor will sign the Bid Form of the Successful Bidder and the Successful Bidder will be deemed the buyer of the Property.

    b. **Overbids.** Any initial Overbid must be at least $125,000.00 in excess of the Purchase Price. If the Debtor receives Overbids, bids at the Auction must be in increments of $50,000.00 over the preceding Overbid.

        i. Debtor will contact prospective bidders regarding the Auction and will notify these persons that they are required to pre-qualify with Debtor on or before September 10, 2010 (the "Overbid Deadline") by providing information and documentation to Debtor sufficient to demonstrate their financial capacity to close the transactions contemplated in this APA. Buyer is deemed to be a Qualified Bidder.

        ii. In addition to such information, as part of the pre-qualification process, each overbidder must deliver to Debtor by the Overbid Deadline:

A. An earnest money deposit of $125,000.00 by cashier's check or other immediately available funds made payable to Debtor. Deposits will be nonrefundable if the Bankruptcy Court accepts the bid of such overbidder and such overbidder fails to consummate the transactions contemplated hereby due to such overbidder's default; and

B. An executed Bid Form that in substance provides that by executing the Bid Form, the proposed overbidder acknowledges that the overbidder has read this APA and agrees (i) to be bound by the terms and conditions of the APA; (ii) that, if the proposed overbidder's bid at the Auction is accepted, the overbidder is obligated to close the purchase transaction on the Closing Date; and (iii) that, if the overbidder fails to timely close the purchase transaction, the overbidder will be in default, the overbidder's earnest money deposit will be forfeited, and Debtor will be free to sell the Property to the next highest bidder then willing and able to close

c. All Overbids (other than overbids made by Buyer) must (i) provide for a minimum cash deposit of $125,000.00 in the form of a cashier's check; (ii) provide for a purchase of the Property for cash only, to close on or before the Closing Date; (iii) not have conditions to close not present in the APA; and (iv) be submitted in writing no later than one week before the Auction.

d. **Break-up Fee and Expense Reimbursement.** In the event that the Successful Bidder is a person other than Buyer or if the Property is acquired in a transaction not contemplated by the APA through no fault of Buyer, at a closing or consummation of such transaction, Debtor will pay to Buyer a break-up fee in the amount of $30,000.00 (the "Break-Up Fee") for proceeding with the APA. Additionally, Buyer will be entitled to reimbursement of its reasonable and actual and documented out-of-pocket fees and expenses incurred by Buyer in conducting its due diligence of the Property, including reasonable attorney fees incurred in connection with the APA and the transactions contemplated thereunder whether incurred prior to and after the Effective Date (the "Expense Reimbursement"). The maximum expense reimbursement that Buyer will be allowed is $50,000.00. In the event that Purchaser is not the successful bidder, the Break-up Fee and Expense Reimbursement shall be paid to Purchaser at Closing. The Break-Up Fee and Expense Reimbursement will be deemed expenses of administration under Bankruptcy Code § 503. In the event that the Sale Order is rescinded by the Bankruptcy Court or reversed on appeal, the buyer will be entitled reimbursement of its actual out-of-pocket costs and expenses in conducting its due diligence as an expense of administration entitled to under Bankruptcy Code § 503.

e. **Compliance with Bidding Procedures.** Any person wishing to submit a higher or better offer for the Property must do so strictly in accordance with the terms of these Bidding Procedures.

4. Notice of the relief sought in the Bid Procedures Motion with respect to the Bidding Procedures, the Auction, the Break-Up Fee and Expense Reimbursement and other

related matters is hereby deemed to be good, sufficient and proper notice thereof, and any requirements for other notice are waived and dispensed with pursuant to Bankruptcy Rules 2002, 6004, and 9007, L.B.R. 9013-1, and §§ 102 and 105 of the Bankruptcy Code.

5. The Debtor is authorized and empowered to pay the Break-Up Fee and Expense Reimbursement to the Buyer, as required under and pursuant to the APA, without further order of the Court.

6. The Debtor is authorized and empowered to take such steps, expend such sums of money, and do such other things as may be necessary to implement and effect the terms and requirements established by this Order.

7. This Order shall be binding upon, and inure to the benefit of the Buyer and its affiliates, successors and assigns, and the Debtor, including any chapter 7 or 11 trustee or other fiduciary appointed for the estate of the Debtor, whether in this case, subsequent bankruptcy cases or upon dismissal of this case.

8. Notwithstanding Bankruptcy Rules 6004(h), this Order shall not be stayed for fourteen (14) days after the entry hereof, and this Order shall be effective and enforceable immediately upon signature hereof.

9. This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order, including, but not limited to any matter, claim or dispute arising from or relating to the Break-Up Fee and Expense Reimbursement, the Bidding Procedures and/or the implementation of this Order.

DATED: September 17, 2010.

BY THE COURT

*Howard Tallman*
United States Bankruptcy Judge